2007 ND 114

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mitchell David HOLBACH, Defendant and Appellant.**

No. 20060297.

Supreme Court of North Dakota.

July 25, 2007.

Timothy C. Wilhelm, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Kent M. Morrow, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Mitchell Holbach appeals from an order partially revoking his probation for stalking and an order disposing of his motions to withdraw his guilty plea to the stalking charge, for new counsel, for a continuance, and for the return of seized property. We affirm.

I

[¶ 2] In July 2006, Holbach entered a guilty plea to a charge of stalking. He was sentenced to serve time in jail and placed on probation for two years. As a condition of probation, Holbach was pro- hibited from having any contact with the stalking victim. Holbach was also required to keep his probation officer informed of where he was living and working, and to meet with the probation officer on a regular basis. In September 2006, the State filed a petition to revoke Holbach's probation, alleging he failed to meet several conditions of probation.

[¶ 3] The court held a hearing on the State's petition to revoke Holbach's probation. Before the hearing, Holbach asked the court to appoint a different lawyer, after having previously been appointed at least four other lawyers to assist him after the criminal judgment. All of the previous lawyers had moved to withdraw from representing Holbach. The court informed Holbach that it intended to proceed with the hearing, but gave Holbach the option to represent himself or have his current lawyer represent him. The court also informed Holbach that if he chose to represent himself, the court would order the lawyer to serve as standby counsel in case he needed help. Initially, Holbach refused to answer the court's questions concerning whether he understood his options. Holbach said he wanted a lawyer to represent him, but wanted someone other than his current lawyer. When the court reiterated he had two options—proceed with his current lawyer or represent himself—Holbach fired his lawyer in open court. The court required Holbach's just-fired lawyer to serve in a standby capacity. The court found Holbach, through his behavior, had effectively waived his right to counsel. At the conclusion of the hearing, the court found Holbach had violated the conditions of his probation. The court revoked Holbach's probation and resentenced him to serve time in jail. Holbach was also placed on supervised probation.

[¶ 4] After the hearing, Holbach filed a motion to withdraw his guilty plea to the

original stalking charge, a motion for new counsel, a motion for a continuance, and a motion for the return of seized property. The court denied the motion to withdraw his guilty plea, as Holbach failed to prove the withdrawal of his guilty plea was necessary to correct a manifest injustice under N.D.R.Crim.P. 32(d). The court also denied Holbach's motion for new counsel and for a continuance because the issues were moot. The court granted Holbach's motion to return seized property, so long as the seized items were not contraband or part of an ongoing investigation. Holbach appealed the court's order partially revoking his probation and the order disposing of his post-hearing motions.

## II

[¶ 5] On appeal, Holbach argues the district court erred in concluding he had voluntarily and intelligently waived his right to counsel. Holbach also argues the court erred by partially revoking his probation and in denying Holbach's motions to withdraw his guilty plea, for new counsel, for a continuance, and for granting Holbach's motion for the return of seized property.

## A

[¶ 6] Holbach argues the district court committed reversible error when it concluded he made a voluntary and intelligent waiver of his right to counsel. On appeal, both Holbach and the State have framed their arguments based on the assumption a probationer has a Sixth Amendment right to counsel and, as such, any waiver of the right to counsel must be demonstrated to have been made knowingly, voluntarily, and intelligently. We do not agree with the parties' assumption. See State v. Wardner, 2006 ND 256, 725 N.W.2d 215, State v. Ennis, 464 N.W.2d

378 (N.D.1990), and John v. State, 160 N.W.2d 37 (N.D.1968).

[¶ 7] However, even under the Sixth Amendment "voluntary, knowing, and intelligent waiver" jurisprudence, we conclude the district court did not err in determining Holbach's conduct amounted to the functional equivalent of a waiver of his right to counsel. Assuming, but without deciding, that the waiver of a probationer's right to counsel is subject to the same standard as the United States Supreme Court has articulated for waiving the Sixth Amendment right to counsel, Holbach's conduct constituted the functional equivalent of a waiver of his right to counsel.

[¶ 8] Under the Sixth Amendment, "the denial of the right to counsel ... requires reversal of a defendant's conviction because prejudice is presumed." City of Fargo v. Habiger, 2004 ND 127, ¶ 18, 682 N.W.2d 300 (quoting State v. Poitra, 1998 ND 88, ¶ 7, 578 N.W.2d 121). As a corollary to the right to counsel, a probationer also has the right to self-representation. See N.D.R.Crim.P. 32(f)(3)(A)(iii) (probationer has right to counsel unless waived); Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (discussing the Sixth Amendment right to counsel and the corollary right to self-representation). To assert the right to self-representation, a probationer must necessarily waive the right to counsel. N.D.R.Crim.P. 32(f)(3)(A)(iii); City of Fargo v. Rockwell, 1999 ND 125, ¶ 8, 597 N.W.2d 406 ("[B]y electing to proceed pro se a defendant necessarily relinquishes many of the benefits of counsel."). In Faretta, the United States Supreme Court explained that before a defendant can waive the right to counsel, the defendant should be made aware of the dangers and disadvantages of self-representation so the record establishes the defendant's decision is knowingly and intelligently made.

422 U.S. at 834–36, 95 S.Ct. 2525; *accord State v. Dvorak*, 2000 ND 6, ¶ 10, 604 N.W.2d 445. In *Dvorak*, we discussed the proper procedure for obtaining a voluntary, knowing, and intelligent waiver of the right to counsel under the Sixth Amendment:

> In [*State v. Harmon*], 1997 ND 233, ¶ 23 n. 1, 575 N.W.2d 635, we acknowledged increasing problems with defendants who proceed pro se, and suggested "[t]rial courts should be careful to make specific on-the-record determinations about whether a defendant unequivocally, knowingly, and intelligently waived either his right to counsel or self-representation. Such a determination should make clear the dangers and disadvantages of self-representation." Although we have not required trial courts to engage in a specific colloquy with a defendant who appears pro se, *we prefer that trial courts eliminate any ambiguity about a waiver by making a specific on-the-record decision the defendant voluntarily, knowingly, and intelligently waived the right to counsel.* Our preference for an on-the-record determination parallels the well-established principle that a waiver of the right to counsel will not be presumed from a silent record and courts will indulge every reasonable presumption against waiver.

*Dvorak*, at ¶ 11 (emphasis added and citations omitted).

**B**

[¶ 9] Before accepting a waiver of the right to counsel, we have stated the district court should engage in a two-part, fact-specific inquiry to determine the waiver of the right to counsel is voluntary, and to determine the waiver of counsel is made knowingly and intelligently. *See Dvorak*, 2000 ND 6, ¶ 12, 604 N.W.2d 445; *Rockwell*, 1999 ND 125, ¶ 9, 597 N.W.2d 406;

*Harmon*, 1997 ND 233, ¶ 22, 575 N.W.2d 635.

■ [¶ 10] First, the Court must determine whether the waiver is voluntary. We have previously rejected the argument that the record must show an unequivocal statement indicating the defendant's desire to represent himself. *See Dvorak*, 2000 ND 6, ¶ 13, 604 N.W.2d 445; *Harmon*, 1997 ND 233, ¶¶ 15, 21, 575 N.W.2d 635. In both *Dvorak* and *Harmon*, we held the defendant's conduct may rise to the "functional equivalent" of a voluntary waiver. In *Dvorak*, we concluded the repeated requests for continuances and new counsel was best described as an attempt to avoid the trial of the charge against the defendant. *Dvorak*, at ¶ 14. We noted "[a]lthough we prefer the waiver of the right to counsel be expressed on the record, where there is a pattern of obstructing the legal process that waiver will seldom be acknowledged by the defendant." *Id.* at ¶ 15. We concluded Dvorak's conduct was the functional equivalent of a voluntary waiver. *Id.*

[¶ 11] Here, Holbach's behavior is indicative of using pretrial motion practice and requesting different lawyers to obstruct the legal process. We have held a request for a new lawyer after the trial court denied an initial request for new counsel constituted the functional equivalent of a voluntary waiver. *See Rockwell*, 1999 ND 125, ¶ 14, 597 N.W.2d 406; *Harmon*, 1997 ND 233, ¶ 21, 575 N.W.2d 635. Holbach was represented by at least four different lawyers after the criminal judgment, all of whom either withdrew or were fired before the probation revocation hearing. Holbach also requested several judges recuse themselves from the case, claiming prejudice and judicial bias. The district court noted Holbach has "gone out of [his] way to alienate virtually everyone

that represented—appointed to represent [him]." The court said new counsel would likely be faced with the same issues as his current lawyer, and then left Holbach to choose whether he was going to represent himself or have his current lawyer represent him at the hearing. After the court reiterated that the hearing would go on as scheduled and Holbach had the option of having his current lawyer represent him or to represent himself, Holbach fired his lawyer in open court. We conclude the trial court did not err in holding Holbach's conduct constituted the "functional equivalent" of a voluntary waiver of counsel.

[¶ 12] Second, the Court must determine whether a waiver was knowingly and intelligently made. "A knowing and intelligent waiver requires a defendant be aware of the dangers and disadvantages of self-representation so the record establishes the defendant knows what he is doing and his choice is made with eyes open." *Dvorak*, 2000 ND 6, ¶ 16, 604 N.W.2d 445 (citing *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525). This inquiry involves a fact-specific determination. *See id.* However, a specific, on-the-record warning of the dangers of self-representation is not required to establish the defendant had the required knowledge from other sources. *Id.* "Under our cases, the test is not limited to what the trial court said or understood, the inquiry focuses on what the defendant understood." *Id.* (citing 3 LaFave et al., *Criminal Procedure* § 11.5(c), at 578–79 (2d. ed.1999)).

[¶ 13] In *Dvorak*, we concluded the defendant knowingly and intelligently waived counsel due to his significant experience with the criminal justice system, the trial court informed him of his right to counsel in the preliminary hearing, Dvorak had previously represented himself in pretrial proceedings, and Dvorak knew a lawyer would be beneficial in his proceedings.

2000 ND 6, ¶ 25, 604 N.W.2d 445. Similarly, in *Rockwell*, we concluded the defendant made a knowing and intelligent waiver when the court informed the defendant he would be responsible for making his own statements, cross-examination, examining his own witnesses, and for complying with the rules of procedure. 1999 ND 125, ¶ 16, 597 N.W.2d 406. Rockwell also acknowledged he would "do whatever the lawyer is supposed to do ... [and be] responsible for the aspect of the lawyer." *Id.* In *Harmon*, we looked to the defendant's previous contacts with the criminal justice system; the trial court provided the defendant with a copy of the court rules and the criminal code; the court explained the defendant would be given no special consideration and the rules would apply equally to him; the defendant was very involved in his case, was literate, and directed correspondence to the court; and the court appointed standby counsel. 1997 ND 233, ¶ 23, 575 N.W.2d 635.

[¶ 14] Here, the record reflects Holbach is very familiar with the criminal justice system and the legal process. He has inundated the district court with motions which he has prepared. Holbach was very involved in his case, was literate, and has directed voluminous correspondence to the court. He acknowledged he had received a copy of the amended petition to revoke his probation. The court also appointed standby counsel. When asked whether he understood his rights, the lower burden of proof, and the potential penalties, Holbach asserted he did not understand. However, the court responded:

THE COURT: Well, you seem to have a working knowledge of the constitution. You seem to have a working knowledge of the law. You certainly seem to have knowledge of how the system works through your various filings and your motions. And I am

not going to accept "I don't understand any of it," as an answer. Do you have a specific question about any of those rights that we have just talked about, sir?

MR. HOLBACH: I will invoke my right to remain silent at this time to preserve my rights to due process.

[¶ 15] In the revocation hearing, Holbach was effective in his cross-examination of the State's witnesses and made numerous objections to the State's presentation of evidence. Although there was no specific inquiry into whether the waiver was knowing or intelligent, the record and transcript indicate Holbach had the requisite knowledge to make an informed decision. As in *Dvorak, Harmon,* and *Rockwell,* we conclude Holbach knowingly and intelligently waived his right to counsel.

### III

[¶ 16] We have considered Holbach's remaining arguments and conclude they are either unnecessary to our opinion, moot, or without merit. *See State v. Decoteau,* 2004 ND 139, ¶ 17, 681 N.W.2d 803 (declining to address unnecessary or non-meritorious arguments). We affirm the order partially revoking Holbach's probation based upon findings that were not clearly erroneous and the order disposing of his motions to withdraw his guilty plea to the stalking charge, for new counsel, for a continuance, and for the return of seized property.

[¶ 17] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.