2015 ND 41

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Damon John WHITE BIRD, Defendant and Appellant.**

No. 20130402.

Supreme Court of North Dakota.

Feb. 12, 2015.

Tristan J. Van de Streek, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Monty G. Mertz, Fargo Public Defender Office, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Damon White Bird appeals from a criminal judgment entered after a jury found him guilty of attempted murder, felonious restraint, tampering with physical evidence, and aggravated assault. We affirm, concluding White Bird was competent to waive his right to counsel, the district court did not err in regulating the introduction of evidence and instructing the jury at the trial, and sufficient evidence supported his convictions.

I

[¶ 2] In April 2013, Fargo Police officers investigated two separate violent assaults on two victims, which occurred between twelve to eighteen hours apart at the same location, White Bird's apartment. On the basis of the investigation, White Bird was subsequently charged with attempted murder, a class A felony; two counts of felonious restraint, class C felonies; tampering with physical evidence, a class A misdemeanor; and aggravated assault, a class C felony. White Bird made

his first appearance in the district court on April 5, 2013, and he applied for and was appointed a public defender.

[¶ 3]　On April 30, 2013, on the basis of a defense motion, the district court ordered White Bird committed to the North Dakota State Hospital to evaluate his fitness to proceed and criminal responsibility. A psychologist at the State Hospital evaluated White Bird and prepared two reports, which were both filed with the court on June 10, 2013. White Bird was found both fit to proceed and criminally responsible. In June 2013, White Bird and his attorney appeared at the preliminary hearing. White Bird waived his preliminary hearing and pled not guilty to all of the charges.

[¶ 4]　In July 2013, White Bird filed a document in which he fired his attorney and moved to dismiss the case. On July 24, 2013, the district court held a hearing at which White Bird's attorney said White Bird had fired him and wanted to represent himself. His attorney raised the issue of White Bird's ability to represent himself. The court then discussed with White Bird his decision to represent himself. White Bird said he did not believe his appointed counsel was giving him an "adequate defense." The court continued discussing the issue with White Bird, but White Bird did not change his mind, insisting on representing himself. The court informed him that trial was only six days away, and he would have to subpoena his witnesses and be ready to try his case.

[¶ 5]　At another pretrial hearing on July 26, 2013, the district court again addressed White Bird's desire to represent himself. The hearing ended with White Bird's consenting to permit his appointed counsel to represent him. However, on July 29, 2013, the day before trial, at the final pretrial hearing, White Bird again insisted that he wanted to represent him-

self. The court again discussed with White Bird the dangers of self-representation and his decision to fire his appointed counsel. The court allowed White Bird to represent himself and appointed his former attorney as standby counsel. The court also denied White Bird's motion to dismiss.

[¶ 6]　At the five-day jury trial in late July and August 2013, White Bird represented himself with limited assistance of standby counsel. The jury found White Bird guilty on all five counts. In October 2013, White Bird moved for an evidentiary hearing, alleging he was not competent to waive his right to counsel. At a November 2013 hearing, the court denied White Bird's motion and sentenced him.

[¶ 7]　The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. White Bird timely appealed from the criminal judgment under N.D.R.App.P. 4(b). We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

II

[¶ 8]　White Bird argues he was not competent to waive his right to counsel.

[¶ 9]　Generally, the corollary to a criminal defendant's constitutional right to counsel is a defendant's right to self-representation. *See State v. Garge*, 2012 ND 138, ¶ 15, 818 N.W.2d 718; *State v. Dahl*, 2009 ND 204, ¶ 22, 776 N.W.2d 37. To represent oneself, a criminal defendant must voluntarily, knowingly, and intelligently waive the right to counsel. *State v. Jones*, 2011 ND 234, ¶ 20, 817 N.W.2d 313. " '[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—

even though the defendant may not know the *specific detailed* consequences of invoking it.'" *Id.* at ¶ 20 (quoting *Iowa v. Tovar,* 541 U.S. 77, 92, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004)). We review an alleged violation of a constitutional right de novo. *State v. Harmon,* 1997 ND 233, ¶ 16, 575 N.W.2d 635.

[¶ 10] In *Dahl,* 2009 ND 204, ¶¶ 24–26, 776 N.W.2d 37, this Court discussed *Indiana v. Edwards,* 554 U.S. 164, 174–178, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), and a district court's responsibility for assessing a defendant's mental capacity to continue self-represented. In *Edwards,* 554 U.S. at 174, 128 S.Ct. 2379, the Supreme Court addressed "whether the Constitution permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." We discussed circumstances in which a defendant may be mentally competent to stand trial, but at the same time "be unable to carry out the basic tasks needed to present his own defense without the help of counsel," such that permitting the defendant "to proceed without counsel ... could result in trials that are either not fair or do not 'appear fair to all who observe them.'" *Dahl,* at ¶ 24 (quotation marks omitted).

[¶ 11] In deciding whether a defendant may continue self-represented, the district court may take a defendant's mental capabilities into account by inquiring whether the defendant is mentally competent to conduct his own trial. *Dahl,* at ¶ 24. A court may then reject a defendant's waiver of the right to counsel when a defendant suffers from mental illness or impairment, "such that the defendant would not be competent to conduct trial proceedings without counsel, *even if the defendant is otherwise competent to stand*

*trial." Id.* (emphasis added). The district courts in these circumstances "can ask questions and observe the behavior of individual defendants [and] are in a better position than appellate courts to determine whether a defendant who is competent to stand trial is [also] competent to conduct his or her own defense." *Id.* at ¶ 25.

[¶ 12] *Edwards* indicates the district court has a "continuing responsibility" at trial to decide whether a self-represented defendant is competent to present his or her own defense:

> The United States Supreme Court [in *Edwards*] explained, "Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Edwards,* [554 U.S. at 175, 128 S.Ct. at 2386]. This is true as a trial progresses, as well. A self-represented defendant that a district court determines to be competent at a pre-trial hearing may later suffer symptoms of mental illness that render him or her incapable of self-representation. The district court has a continuing responsibility to ensure the defendant is afforded a fair trial. As the United States Supreme Court noted, "The Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes." *Id.* at [177, 128 S.Ct. at 2387] (quoting *Illinois v. Allen,* 397 U.S. 337, 350 [90 S.Ct. 1057, 25 L.Ed.2d 353] (1970) (Brennan, J., concurring)).

*Dahl,* at ¶ 26. "To ensure the defendant is afforded a fair trial, a district court can appoint counsel for the defendant during trial if the court determines the defendant is no longer competent to present his or her own defense." *Id.* at ¶ 26.

[¶ 13] In this case, White Bird, now represented by counsel on appeal, argues

his psychological evaluation demonstrated he had a rather low level of trial competence and a full scale IQ of 76 and had been diagnosed with a list of mental disorders affecting his intellectual and emotional functioning. He asserts that while he was found competent to stand trial, his evaluation did not address whether he could represent himself at trial. White Bird contends the record considered as a whole establishes he did not have sufficient knowledge and intelligence to be competent to waive his right to counsel.

[¶ 14] White Bird takes issue with a wide range of alleged errors he committed while representing himself at trial. White Bird asserts he did virtually nothing to establish his self-defense theory, he had no concept of presenting evidence or subpoenaing witnesses, and he essentially stipulated to introduce "everything." He also asserts that he elicited a lot of hearsay testimony, which he argues would not have been heard by the jury had he been represented by counsel, and that his presentation at trial was self-destructive. White Bird concedes the district court made numerous comments to him about the dangers of self-representation, but asserts the court never addressed this subject in the context of his psychological evaluation. He contends the pretrial evaluation establishes his long history of institutionalization and his many deficits. White Bird argues the court erred in allowing him to represent himself.

[¶ 15] The State responds, however, that the district court properly allowed the defendant to represent himself with the assistance of standby counsel. The State asserts the court had the benefit of two extensive examinations of White Bird's competency and the tests supported the district court's decision to allow him to represent himself. The State also points out White Bird was able to impeach witnesses at trial and had a coherent, albeit unsuccessful, trial strategy. The State emphasizes the court spent "hours" at numerous hearings making certain White Bird was aware of the dangers of self-representation. Nonetheless, White Bird still fired his counsel and represented himself.

[¶ 16] Here the district court repeatedly and at length discussed with White Bird the dangers and pitfalls of self-representation at pretrial hearings on July 24, 26, and 29, 2013. The court also had the opportunity to assess White Bird's mental competence in representing himself at trial. In response to his October 2013 posttrial motion, in which White Bird asserted he was not competent to represent himself, the court thoroughly explained its decision that he was competent to waive counsel and represent himself throughout the trial:

The motion itself appears to—well, it specifically requests an evidentiary hearing, but it appears to proceed on the basis that Mr. White Bird was not competent to waive his right to counsel. So that is the first issue that I want to address. I have reviewed the State's response to that motion. I have also reviewed actually now on several occasions both when it was initially submitted and, again, in connection with the sentencing proceedings, I have reviewed the very extensive psychological evaluation, competency assessment prepared by [the State Hospital psychologist]. And of course I am very familiar with this proceeding as I have been the presiding judge from the outset and sat throughout the five-day jury trial during which time Mr. White Bird did represent himself. So I feel like I have a very good handle on many things, including the basic question of competency. Competency to proceed to trial requires plainly and

simply that the defendant have the capacity to understand the nature of the proceedings and to assist, should he choose to do so, with his defense.

Now, in this case of course Mr. White Bird chose not to assist his lawyer but instead to act as his own lawyer. But from the beginnings of the proceedings, watching Mr. White Bird, listening to Mr. White Bird, and just being exposed to the way that he conducted these trial—or, I'm sorry, the trial, it always impressed me that Mr. White Bird is a really quite intelligent individual. To the extent that it was necessary for him to grasp the technical aspects of a jury trial which is a very complicated process, something that I've seen many well-trained lawyers struggle with. Again, I was surprised at how adeptly he was able to do at least the mechanical aspects of things.

And I'm going to use the beginning of the trial just by way of example. The voir dire—and voir dire is a—at least I've always found it to be a complicated and bewildering process. But at the beginning of the case I explained to Mr. White Bird how the voir dire process would work, gave him a seating chart, kind of gave him some suggestions as to how he should keep track of the panel members as they were called. Talked briefly about how the peremptories would be executed—or exercised, rather. And Mr. White Bird did all of those things without any difficulty, was able to keep track of the panel members, was able to identify them by name. And when it came time to exercise the peremptories was able, again, to do that without any apparent difficulty. All of which certainly contradicts the notion that he did not have the ability to understand the nature of the proceedings and would not have had the ability had he chosen to do so to assist with counsel.

Now, the fact that Mr. White Bird chose to represent himself, there really is nothing that I can say about that that hasn't been said redundantly and wasn't stressed by me repeatedly during the trial. Mr. White Bird, I encouraged you every which way I could think of not to do what you did.

THE DEFENDANT: You've also objected to a lot of my objections.

THE COURT: Sir, let me talk. I continue to think that it was a very unfortunate decision that you made, but I also understand that it was your decision. You had the right to represent yourself; you chose to do so even though you had a very good, skilled and competent lawyer ready to go and to do his job on your behalf. Certainly, things were done during the trial by you that I have questions about, but none of those questions involve your basic competency.

So based on my own observations and impressions formed during a very long jury trial combined with the professional assessment that was performed early on in this case at the request of defense counsel, I find that Mr. White Bird certainly was competent not only to proceed to trial but to make all of the decisions that were made. Most specifically, the decision to waive his right to an attorney and to try the case on his own behalf. To proceed in a pro se manner.

[¶ 17] The district court asked questions and observed White Bird's behavior, and was "in a better position than [an] appellate court[ ] to determine whether a defendant who is competent to stand trial is [also] competent to conduct his or her own defense." *Dahl*, 2009 ND 204, ¶ 25, 776 N.W.2d 37. On the basis of this record, we conclude the district court did not

err in determining White Bird was competent to waive his right to counsel.

## III

[¶ 18] White Bird argues the district court failed to ensure he received a fair trial when the court failed to regulate the introduction of evidence and properly instruct the jury.

[¶ 19] Generally, we review a district court's evidentiary rulings under an abuse of discretion standard. *State v. Cone*, 2014 ND 130, ¶ 12, 847 N.W.2d 761. A district court abuses its discretion when its decision is arbitrary, capricious, or unreasonable, or when the court misapplies or misinterprets the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* A failure to object at trial, however, limits our inquiry on appeal to deciding whether the alleged error constitutes obvious error affecting substantial rights. *State v. Doppler*, 2013 ND 54, ¶ 14, 828 N.W.2d 502; *see* N.D.R.Crim.P. 52(b). Thus, a party's failure to object to evidence admitted at trial generally waives that party's right to complain on appeal about the admission of the evidence. *Doppler*, at ¶ 14.

[¶ 20] "Jury instructions must correctly and adequately inform the jury of the applicable law, and must not mislead or confuse the jury." *State v. Erickstad*, 2000 ND 202, ¶ 16, 620 N.W.2d 136. "[W]e review jury instructions as a whole to decide whether the instructions adequately and correctly inform the jury of the applicable law, even though part of the instruction standing alone may be insufficient or erroneous." *State v. Romero*, 2013 ND 77, ¶ 16, 830 N.W.2d 586 (quotation marks omitted). If jury instructions, when considered as a whole, correctly advise the jury of the law, it is sufficient even if part of it standing alone may be insufficient. *Id.* "Selecting only a part of the instructions without considering the jury instructions as a whole is not proper because it can result in erroneous and misleading inferences." *City of Minot v. Rubbelke*, 456 N.W.2d 511, 513 (N.D.1990).

[¶ 21] White Bird argues broadly that a "large volume" of otherwise inadmissible, extraneous, and prejudicial evidence was "allowed" into evidence at trial. In representing himself, White Bird's strategy at trial was apparently that he wanted the jury to "hear and see everything." White Bird contends on appeal, represented by counsel, that the State allowed him to do so and to say "virtually anything" and introduce whatever he wanted in representing himself, and the district court did "virtually nothing" to regulate the introduction of evidence. White Bird argues many of his exhibits were essentially "everything" the State had disclosed to him. He asserts the most harmful materials presented to the jury included police reports and search warrant materials, in addition to certain "highly prejudicial" hearsay testimony regarding statements taken by police from a woman who was not a witness at trial as well as the unedited recordings of White Bird's interview with the police. White Bird argues the court erred in failing to instruct the jury on the limits of such evidence, including evidence of his prior bad acts, which affected his substantial rights and violated his right to a fair trial.

[¶ 22] The State responds that White Bird's arguments miss the point because the State did not seek to introduce any of the evidence about which he now complains on appeal, but rather White Bird himself offered the evidence at trial. The State argues White Bird "invited" the error and the court gave White Bird ample warnings, but he still elected to represent himself. The State asserts White Bird's decision to offer the evidence at issue was part of his overall trial strategy and he

should not get the benefit of testing his theory at trial, only to subsequently claim reversible error when his strategy proved ineffective.

[¶ 23] "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *State v. Grager*, 2006 ND 102, ¶ 7, 713 N.W.2d 531 (quotation marks omitted). "Our judicial maxims, which aid in the application of the law, support this position: '[a]cquiescence in error takes away the right of objecting to it.' N.D.C.C. § 31–11–05(7)." *Grager*, at ¶ 7; *see State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658 ("Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right, and F.R.Crim.P. 52(b) applies only to 'forfeited' and not to 'waived' errors."); *see also United States v. Truitt*, 440 F.2d 1070, 1071 (5th Cir.1971) (citing *Mercer v. Theriot*, 377 U.S. 152, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964)) ("It is settled law that one waives his right to object to the admission of evidence if he later introduces evidence of the same or similar import himself.").

[¶ 24] "A party may not later take advantage of irregularities that occur during a trial unless the party objects at the time they occur, allowing the court to take appropriate action, if possible, to remedy any prejudice that may result." *State v. Lee*, 2004 ND 176, ¶ 10, 687 N.W.2d 237. The rationale for this rule is that it should not "behoove a defendant to sit by and invite error in the hope that if he did not prevail the first time, he would prevail upon appellate review of invited error." *Lee*, at ¶ 11 (quoting *State v. Moore*, 286 N.W.2d 274, 283 (N.D.1979)). Courts have held, however, that the "invited error" doctrine does not apply when a constitutional error is structural, but few constitutional errors qualify for the "structural" label. *See, e.g., State v. Verser*, 299 Kan. 776, 326 P.3d 1046, 1053 (2014) (citing *United States v. Marcus*, 560 U.S. 258, 263, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010)) (short list of structural errors includes total deprivation of counsel, lack of impartial trial judge, denial of right to self-representation at trial, violation of right to public trial, erroneous reasonable doubt instruction).

[¶ 25] In this case, White Bird did far more than simply fail to object to the evidence he now complains about on appeal. Rather, the trial transcript reveals he affirmatively sought the admission of the evidence and used the evidence during trial, such as various statements in police reports and evidence revealed through his cross-examination of witnesses involved in the case. The record reflects the district court advised White Bird on various occasions before trial and during trial of the disadvantages, dangers, and pitfalls of representing oneself at a serious felony trial, going so far as attempting to dissuade him on more than one occasion from proceeding without counsel and appointing a standby counsel. White Bird nonetheless accepted the risks and consistently and steadfastly maintained his desire to represent himself at trial.

[¶ 26] On the basis of our review of the record, we conclude White Bird plainly decided to engage in a trial strategy, albeit unsuccessful, and to introduce the evidence about which he now complains on appeal. We conclude White Bird was not denied a fair trial on grounds the court erred by not limiting the admission of evidence he introduced and by not instructing the jury to minimize its prejudicial effect.

IV

[¶ 27] White Bird argues the evidence was insufficient to prove he was guilty of the charges.

[¶ 28] Generally, the issue of sufficiency of evidence for appeal is preserved by a motion for judgment of acquit-

tal under N.D.R.Crim.P. 29 at the close of the State's case-in-chief. *Romero*, 2013 ND 77, ¶ 24, 830 N.W.2d 586. The standard for reviewing a sufficiency of the evidence challenge is well-established:

"When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the [trier of fact] to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A [trier of fact] may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty."

*Id.* at ¶ 24 (quoting *State v. Bruce*, 2012 ND 140, ¶ 16, 818 N.W.2d 747). "When the verdict is attacked and the evidence is legally sufficient to sustain the verdict, [this Court] will not disturb the verdict and judgment even though the trial included conflicting evidence and testimony." *State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204.

[¶ 29] Here White Bird moved for acquittal under N.D.R.Crim.P. 29. The jury found White Bird guilty of attempted murder, two counts of felonious restraint, aggravated assault, and tampering with physical evidence. On the basis of our review, we conclude evidence was presented to support White Bird's convictions. Both physical assault victims testified at trial. One victim testified regarding his extensive injuries as a result of White Bird's assault on him, including White Bird's hitting him with a table leg. Another witness at trial testified that he witnessed the beating and that during the attack White Bird stated the victim would not leave White Bird's apartment unless he was in a "body bag." Both the victim and the witness testified White Bird prevented them from leaving his apartment under circumstances that were threatening or terrorizing. The other victim testified White Bird stabbed him with a sword.

[¶ 30] White Bird acknowledged at trial that he hid evidence of his crimes on the roof of a nearby downtown building to prevent police from discovering the evidence during the investigation. Additionally, White Bird testified he had hit the one victim with the table leg because he kept coming at him with a knife and stopped hitting him when the victim lost consciousness. White Bird also said he "only" stabbed the other victim twice in the chest and that the sword had gone all the way through, causing four wounds— two entrance wounds and two exit wounds.

[¶ 31] While contradictory and conflicting testimony was presented at trial, White Bird has the burden of demonstrating the evidence permits "no reasonable inference of guilt" when viewed in the light most favorable to the verdict. *Romero*, 2013 ND 77, ¶ 30, 830 N.W.2d 586. Under our deferential standard of review, we conclude there was sufficient evidence to convict White Bird of the charges.

V

[¶ 32] We have considered White Bird's remaining arguments and issues and conclude they are either unnecessary to our analysis or without merit. The criminal judgment is affirmed.

[¶ 33] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.