FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
MARCH 24, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2021 ND 42

State of North Dakota,                                            Plaintiff and Appellee

    v.

Juan Antonio Martinez,                                        Defendant and Appellant

### No. 20190407

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Benjamen J. Johnson, Judge.

Nathan K. Madden, Assistant State's Attorney, Williston, N.D., for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, N.D., for defendant and appellant.

State of North Dakota,                                            Plaintiff and Appellee

    v.

Everest Burdan Moore,                                        Defendant and Appellant

### Nos. 20200080–20200082

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

Kelly A. Dillon, Assistant Attorney General, Bismarck, N.D., for plaintiff and appellee.

Scott O. Diamond, Fargo, N.D., for defendant and appellant.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justice Crothers joined. Justice VandeWalle filed an opinion concurring and dissenting. Justice McEvers filed a dissenting opinion.

**Tufte, Justice.**

[¶1] We consolidated these criminal cases after argument under N.D.R.App.P. 3(b), because both involve whether a defendant may waive his Sixth Amendment right to a public trial. Everest Burdan Moore appeals three criminal judgments following a jury verdict finding him guilty of eight counts of gross sexual imposition. Moore argues the district court closed two pretrial hearings and parts of his trial without the pre-closure analysis required by *Waller v. Georgia,* 467 U.S. 39, 48 (1984), thus violating his public trial right guaranteed by the Sixth Amendment. Juan Martinez appeals from a criminal judgment entered after a jury found him guilty of continuous sexual abuse of a child. Martinez argues the district court erred by closing the courtroom to the public during the testimony of the minor victim and the victim's counselor. We reverse the judgments and remand for new trials.

I

[¶2]   Because of the increasing frequency with which closure orders have been entered in the trial courts and then argued to us on appeal, it is appropriate that this Court articulate some procedural guidelines as to how closure motions should be handled in the trial courts. *See Minot Daily News v. Holum*, 380 N.W.2d 347, 349-50 (N.D. 1986); *Gannett River States Pub. Co. v. Hand*, 571 So. 2d 941, 945 (Miss. 1990). We emphasize that closures of criminal trial proceedings to the public should be rare. District courts should not close trials as a matter of convenience, to increase judicial efficiency, or simply because the parties both prefer to exclude the public. Trial courts should not close trial proceedings at the request of one or both parties without carefully considering the asserted interest in closing the hearing, alternatives to closure, and the minimum scope necessary to serve any overriding interest in closure. In the ordinary course, a request to close a trial should be made by pretrial motion, which provides the district court time and opportunity to make findings and

provides the opposing party, the press and the general public opportunity to assert their interests in a public trial. *Holum*, 380 N.W.2d at 350; *State v. Klem*, 438 N.W.2d 798, 800 (N.D. 1989).

[¶3]   When considering on appeal a defendant's claim that his right to a public trial was violated, we first consider whether the claim of error was preserved at trial. *State v. Olander*, 1998 ND 50, ¶¶ 8, 14, 575 N.W.2d 658 (explaining that whether an issue is preserved by timely objection, forfeited, or waived determines the standard of review for the issue). We then consider the threshold question of whether there was a closure implicating the public trial right. *State v. Morales*, 2019 ND 206, ¶ 16, 932 N.W.2d 106. If there was a closure, we determine whether the trial court made pre-closure *Waller* findings sufficient to justify the closure. *Id.* at ¶ 25. We review the court's findings under the clearly erroneous standard and its application of the law to those findings de novo. *See Klem*, 438 N.W.2d at 802-03; *State v. Hall*, 2017 ND 124, ¶ 12, 894 N.W.2d 836 (reviewing district court's speedy trial conclusion de novo and associated findings for clear error).

A

[¶4]   In criminal cases, errors not raised in the district court may be either forfeited errors or waived errors. *State v. Watkins*, 2017 ND 165, ¶ 12, 898 N.W.2d 442 (citing *Olander*, 1998 ND 50, ¶ 14). "Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right." *Id.* We review forfeited errors under N.D.R.Crim.P. 52(b) for obvious error. *Id.* The structural error doctrine applies to a narrow class of rights, including three Sixth Amendment rights defining the framework of a trial: the right to counsel, the right to self-represent, and the right to a public trial. *State v. Rogers*, 2018 ND 244, ¶ 5, 919 N.W.2d 193. Because a structural error affects the framework within which a trial proceeds, it renders the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. *Morales*, 2019 ND 206, ¶ 14. The structural error doctrine serves the purpose of "ensur[ing] insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Id.* (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017)). Errors that affect the entire adjudicatory framework "defy analysis by 'harmless-error'

2

standards." *Rogers*, at ¶ 4 (quoting *Puckett v. United States*, 556 U.S. 129, 141 (2009)). An impact on the trial's outcome is not necessary in the case of structural errors. *Morales*, at ¶ 14. A difficulty in "assess[ing] the effect of the error" is inherent in the very nature of a structural error. *Rogers*, at ¶ 4 (quoting *United States v. Marcus*, 560 U.S. 258, 263 (2010)).

[¶5] "Violation of the right to a public trial is a structural error." *Morales*, 2019 ND 206, ¶ 15 (citing *Rogers*, 2018 ND 244, ¶ 5). This Court has repeatedly said structural errors require automatic reversal regardless of whether they were forfeited or waived, including when the error is invited. *Morales*, at ¶ 15; *Rogers*, at ¶ 3; *State v. Rende*, 2018 ND 56, ¶ 8, 907 N.W.2d 361; *State v. Decker*, 2018 ND 43, ¶ 8, 907 N.W.2d 378; *Watkins*, 2017 ND 165, ¶ 12; *see State v. White Bird*, 2015 ND 41, ¶ 24, 858 N.W.2d 642. These cases did not squarely present the question of whether or under what conditions a structural error may be waived. Now that the issue is properly before us, we acknowledge this Court's prior statements were overly broad, and we now explain and narrow these broad statements about waiver of structural error.

[¶6] In *White Bird*, 2015 ND 41, ¶¶ 18, 21, the defendant argued he was denied a fair trial when the district court admitted a "large volume" of inadmissible, extraneous, and prejudicial evidence. The defendant claimed the State allowed him to say "virtually anything" and introduce whatever he wanted while he represented himself at trial and the court failed to regulate the introduction of evidence and instruct the jury on the limits of the evidence. *Id.* at ¶ 21. In the context of discussing the invited error doctrine, this Court stated that "[c]ourts have held . . . that the 'invited error' doctrine does not apply when a constitutional error is structural, but few constitutional errors qualify for the 'structural' label." *Id.* at ¶ 24. However, we did not decide that any of the alleged errors were structural errors. We held the defendant was not denied a fair trial because he engaged in an unsuccessful trial strategy and introduced the evidence about which he complained on appeal. *Id.* at ¶ 26.

[¶7] In *Watkins*, 2017 ND 165, ¶ 8, the defendant argued the district court erred in applying a mandatory minimum sentence for armed offenders because the jury was not required to find that he possessed a firearm. We concluded the district court erred by failing to ask the jury to determine whether the

3

defendant possessed a firearm, a fact which triggered imposition of the mandatory minimum sentence. *Id.* at ¶ 11. We said structural errors require reversal regardless of whether they have been waived, but we held the error was not a structural error. *Id.* at ¶ 13 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013)).

[¶8] In *Decker*, 2018 ND 43, ¶ 6, the defendant argued his trial was tainted by structural error when court staff excluded the public from attending jury selection. Citing *White Bird* and *Watkins*, we said structural errors are immune to the invited error doctrine, do not necessarily require action at the time the error occurs, and require automatic reversal regardless of whether the error is forfeited or waived. *Id.* at ¶ 8. This statement was not necessary to the decision because Decker did not waive or invite the error. Decker objected during trial after learning of the closure and requested a mistrial. *Id.* at ¶ 3.

[¶9] In *Rende*, 2018 ND 56, ¶ 5, the defendant argued the jury instructions failed to include an element of the offense. We again stated structural errors require reversal regardless of whether they have been forfeited or waived. *Id.* at ¶¶ 8-9. But, as in *Watkins*, we concluded an *Apprendi* or *Alleyne* error in jury instructions is not a structural error. *Id.* at ¶ 10. Our statement about structural error was not necessary to our decision. *Id.*

[¶10] In each of these cases, statements that structural errors require automatic reversal regardless of whether the errors were waived was dicta. "Any comment in an opinion which is not essential to the determination of the case and which is not necessarily involved in the action is dictum and not controlling in subsequent cases." *City of Bismarck v. McCormick*, 2012 ND 53, ¶ 14, 813 N.W.2d 599 (quoting *Bakke v. St. Thomas Pub. Sch. Dist. No. 43*, 359 N.W.2d 117, 120 (N.D. 1984)). In *Bakke*, we further explained:

> A prior opinion is only stare decisis on points decided therein; any expression of opinion on a question not necessary for decision is merely dictum, and is not, in any way, controlling upon later decisions. Our opinion should be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by circumstances of cases not before the Court.

*Bakke,* 359 N.W.2d at 120 (cleaned up).

[¶11] However, in *Rogers*, 2018 ND 244, this Court held a defendant's Sixth Amendment right to a public trial was violated when the defendant invited the error. In *Rogers*, the defendant requested the closure of the courtroom during a competency hearing and then argued on appeal that the closure violated his Sixth Amendment right to a public trial. *Id.* at ¶¶ 1, 6. We acknowledged that the defendant's invitation to the district court to commit the error would ordinarily foreclose relief from that error, but we said "[s]tructural errors are immune to the 'invited error' doctrine." *Id.* at ¶ 6 (quoting *Decker*, 2018 ND 43, ¶ 8). We determined the Sixth Amendment public trial right attached to the pretrial competency hearing, the court was required to consider the *Waller* factors before closing the courtroom, and the court did not complete the required analysis. *Rogers*, at ¶¶ 12, 17. We did not reverse the judgment, but remanded for a new competency hearing. *Id.* at ¶¶ 19-21.

[¶12] In *Morales*, 2019 ND 206, ¶ 4, the courtroom was closed multiple times during the trial and pretrial hearings, including once at the defendant's request and other times without his objection. After stating structural errors are errors so intrinsically harmful as to require automatic reversal regardless of whether they were forfeited or waived, we said the closures in which the defendant failed to preserve the issue with a timely objection were forfeited errors that would be reviewed only for obvious error. *Id.* at ¶¶ 15, 24. We concluded the defendant did not object to the second closure, the error was forfeited, and we would review for obvious error only. *Id.* at ¶ 24. We further concluded the closure was obvious error because the court did not make pre-closure *Waller* findings, the error necessarily affected the defendant's substantial rights because it was a structural error, and therefore it was an obvious error. *Id.* at ¶¶ 25-26. Although one structural error is sufficient to require reversal, we went on to discuss the third and fourth closures because the repeated closures weighed in the exercise of our discretion to notice obvious error. *Id.* at ¶ 34. We held any error related to the third closure was also forfeited because the defendant failed to object to the closure, but we also concluded this closure was obvious error. *Id.* at ¶¶ 27-28. We stated the defendant requested the fourth closure, inviting the error, and we noted the

invited error doctrine ordinarily does not permit a defendant to appeal an invited error. *Id.* at ¶ 30. Rather than following *Rogers* and holding an invited error during trial required automatic reversal, we said:

> Because we have concluded that the second and third trial closures were obvious error, we need not decide here whether the district court's failure to articulate *Waller* findings prior to closing proceedings at the specific request of the defendant is an error that may support reversal of a criminal judgment on appeal.

*Id.*

[¶13] We now conclude that the right to a public trial can be waived according to the same standards of knowing, intelligent, and voluntary waiver that we have applied to other Sixth Amendment rights that implicate structural error such as the right to counsel and the right to a jury trial. Our prior statements to the contrary do not correctly state the law. We acknowledge there is some division among the federal circuits and our sister states on waiver of the right to a public trial. We find the following decisions persuasive in reaching our conclusion that a defendant's waiver of the right to a public trial must be knowing, intelligent, and voluntary.

[¶14] In *Patton v. United States*, the United States Supreme Court ruled that a defendant can waive the right to a jury trial by "express and intelligent consent." 281 U.S. 276, 312 (1930). The United States Court of Appeals for the Third Circuit concluded that "it is well settled that the right [to public trial] is one which can be waived." *United States v. Kobli*, 172 F.2d 919, 920 n.2 (3rd Cir. 1949). Citing *Kobli*, the Supreme Court stated that "a defendant can, under some circumstances, waive his constitutional right to a public trial." *Singer v. United States*, 380 U.S. 24, 35 (1965). Other federal circuits have also held that the right to a public trial can be waived, so long as the waiver is knowing, intelligent, and voluntary. *Walton v. Briley*, 361 F.3d 431, 433-34 (7th Cir. 2004) (explaining "the right to a trial, the right to a trial by jury, the right to an attorney, and the right to confront witnesses" are like the right to a public trial such that "a right to a public trial may be relinquished only upon a showing that the defendant knowingly and voluntarily waived such a right"); *Martineau v. Perrin*, 601 F.2d 1196, 1200 (1st Cir. 1979) ("since a constitutional

right is involved, there had to be an intentional and knowing waiver"); *United States v. Canady*, 126 F.3d 352, 359 (2nd Cir. 1997) ("A waiver of a constitutional [public trial] right must be voluntary, knowing and intelligent, that is, the act of waiver must be shown to have been done with awareness of its consequences."); *Hutchins v. Garrison*, 724 F.2d 1425, 1431 (4th Cir. 1983) (holding that a waiver of the right to a public trial is effective only if it is "an intentional relinquishment of a known right or privilege"). A waiver is an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *State v. Edwards*, 2020 ND 200, ¶ 9, 948 N.W.2d 832. *Waller v. Georgia* left it open to the state courts to decide whether a defendant who agrees to a closure "is procedurally barred from seeking relief as a matter of state law." 467 U.S. 39, 42 n.2 (1984).

[¶15] To determine the appropriate standard for waiver of the right to a public trial, we draw on our cases involving the right to counsel and the right to a jury trial, both of which are guaranteed by the Sixth Amendment and trigger structural error review upon violation. "Courts must not infer waiver of constitutional rights [and] should indulge every reasonable presumption against waiver." *State v. Ochoa*, 2004 ND 43, ¶18, 675 N.W.2d 161; *State v. Gustafson*, 278 N.W.2d 358, 362 (N.D. 1979) (citing *Boyd v. Dutton*, 405 U.S. 1, 3 (1972)). "Before accepting a waiver of the right to counsel, we have stated the district court should engage in a two-part, fact-specific inquiry to determine the waiver of the right to counsel is voluntary, and to determine the waiver of counsel is made knowingly and intelligently." *State v. Holbach*, 2007 ND 114, ¶ 9, 735 N.W.2d 862; *see State v. Dvorak*, 2000 ND 6, ¶ 12, 604 N.W.2d 445. "[T]he court must ascertain whether or not the defendant's jury trial waiver is a voluntary, knowing, and intelligent decision 'done with sufficient awareness of the relevant circumstances and likely consequences.'" *State v. Kranz*, 353 N.W.2d 748, 752 (N.D. 1984) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *Swearingen v. State*, 2013 ND 125, ¶ 10, 833 N.W.2d 532 (concluding the limited record did not clearly reflect that defendant's waiver was knowing, intelligent, and voluntary). Although an express waiver on the record may preclude a defendant's assertion of error on appeal, the district court should not automatically approve waivers without considering the

7

broader interests in open courts and public trials by conducting pre-closure *Waller* analysis. *See Kranz*, 353 N.W.2d at 752-53 ("It is also the trial court's responsibility to jealously preserve the right to trial by jury. . . . [A] trial court should not automatically approve jury trial waivers.").

[¶16] In *Canady*, the Second Circuit Court of Appeals applied a knowing and voluntary standard to waiver of the public trial right. 126 F.3d 352. At trial, after both sides had rested, the district court, addressing the defendant directly, stated:

> I will reserve. . . . I intend to write a decision on the matter, setting forth my findings and conclusions. I hope to do that promptly. . . . Mr. Canady, the Court has considered the proof carefully. I want to consider the cases submitted by you and your lawyer, and I will get a decision to you and your lawyer as soon as I can.

*Id.* at 359. The trial court mailed its decision and order convicting the defendant to the parties. *Id.* at 355. Two weeks later, the defendant first learned of his conviction by reading a newspaper. *Id.* The Second Circuit Court of Appeals ruled that the trial court's statement was not sufficient to give the defendant "notice of the district court's intent to mail its verdict or that the verdict would not be delivered to him in open court." *Id.* at 359. Therefore, the Second Circuit Court of Appeals found the defendant had not waived his right to assert a violation of the public trial right on appeal. *Id.* In contrast, the trial court in *Hutchins* asked the petitioner, "With regard to a closed court, Mr. Hutchins, do you waive all the provisions of both the State and Federal Constitutions that require courts to be open and public?" 724 F.2d at 1431. "The petitioner responded, 'Yes sir.'" *Id.* The Fourth Circuit Court of Appeals held that the trial court had advised the petitioner of his right to an open hearing and that the petitioner knowingly and intelligently waived the public trial right.

[¶17] In *Swearingen*, on postconviction relief, the defendant claimed he had received ineffective assistance of counsel when the defendant's attorney and the prosecution stipulated to waiver of a jury trial. 2013 ND 125, ¶ 9, 833 N.W.2d 532. In addition to the defendant's signed stipulation, the record contained a colloquy that took place at a pre-trial conference:

MR. THOMPSON: Your Honor, we did file a notice and stipulation that Matthew would agree to go to a bench trial as apposed (sic) to a jury trial. It seems that the issue to us is whether or not the alleged acts that he is accused of committing fit the statute of gross sexual imposition and so, to get that we would have to have the alleged victim testify.

THE COURT: Okay.

MR. THOMPSON: We agreed that it would be better for her to testify in front of the court rather than in front of a jury.

THE COURT: Okay. There's no objection from the State to go to a bench trial?

MR. OLSON: No.

*Id.* at ¶ 10. Focusing on the trial court's failure to ask the defendant in open court whether his decision was knowing, intelligent, and voluntary and to explain the consequences of such a decision, we held that the record did not clearly reflect the defendant's waiver was knowing, intelligent, and voluntary. *Id.* The case was remanded for findings on the issues raised and to provide a transcript of the postconviction evidentiary hearing. *Id.* at ¶ 18.

[¶18] Where possible, a motion to close proceedings should be made in advance of the requested closure. *See Holum*, 380 N.W.2d at 350. "Whether there has been an intelligent waiver of constitutional rights depends upon the facts and circumstances of each particular case, including the background, the experience, and the conduct of the accused." *State v. Murchison*, 2004 ND 193, ¶ 9, 687 N.W.2d 725. "What suffices for waiver depends on the nature of the right at issue. 'Whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.'" *New York v. Hill*, 528 U.S. 110, 114 (2000) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). When the court erroneously orders closure by failing to make sufficient *Waller* findings, we conclude the procedure accepted in *Hutchins,* 724 F.2d at 1431, is the minimum required for a valid waiver of the public trial right. The record must reflect the defendant was informed prior to closure that the constitutional right to a public trial was implicated, and there must be an express waiver of that right under circumstances indicating the waiver was voluntary.

9

B

[¶19] A de novo standard of review applies to whether facts rise to the level of constitutional violation. *Rogers*, 2018 ND 244, ¶ 3, 919 N.W.2d 193. "Like the Sixth Amendment right to counsel, the Sixth Amendment public trial right attaches from the beginning of adversarial proceedings through sentencing." *Morales*, 2019 ND 206, ¶ 16, 932 N.W.2d 106 (citing *Rogers*, 2018 ND 244, ¶¶ 11-12). After determining that the claimed violation was in a proceeding to which the public trial right attaches, the threshold determination is whether there was a closure implicating the right. *See Commonwealth v. Maldonado*, 2 N.E.3d 145, 152 (Mass. 2014) (answering in the negative "the threshold question of whether the identification requirement was a closure of the court room in the constitutional sense"); *State v. Taylor*, 869 N.W.2d 1, 11 (Minn. 2015) ("before we can apply the *Waller* test to determine if a closure is justified, we must determine whether a closure even occurred").

[¶20] We have said that brief sidebars or bench conferences conducted during trial to address routine evidentiary or administrative issues outside the hearing of the jury ordinarily will not implicate the public trial right. *Morales*, 2019 ND 206, ¶ 17 (citations omitted). When the public and jury can view a bench conference, despite being unable to hear what is said, a record being promptly made available satisfies the public trial right. *Id.* (citations omitted). A need to discuss a matter outside the presence of the jury may not be a sufficient basis to also close the proceedings to the public. *Id.* For example, a ruling on an objection must be held outside the jury's hearing but need not be conducted so that the public can hear. *Id.* (citing *State v. Smith*, 334 P.3d 1049, 1054 (Wash. 2013)). Likewise, limitations on the public's opportunity to view exhibits as they are presented to the jury do not constitute a closure. *State v. Muhammad*, 2019 ND 159, ¶¶ 11-15, 931 N.W.2d 181. Matters traditionally addressed during private bench conferences or conferences in chambers generally are not closures implicating the Sixth Amendment. *State v. Smith*, 876 N.W.2d 310, 329 (Minn. 2016). But "[i]t is the type of proceeding, not the location of the proceeding, that is determinative." *Id.*

[¶21] Trial courts retain broad authority to enforce order and decorum during court proceedings. A trial court order intended to control disruption is

10

generally not considered to be a "closure" so long as the courtroom is not cleared and those people who comply with neutral rules regarding decorum and disruption are permitted to remain. *See People v. Colon*, 521 N.E.2d 1075, 1079-80 (1988) (holding restriction on entry and exit during jury charge "does not constitute a 'closure' of the proceedings"); *Taylor*, 869 N.W.2d at 11 (concluding not every courtroom restriction is a "true closure" which may be determined by considering whether "the courtroom was never cleared of all spectators, those in attendance were told they were welcome to stay, no individual was ever ordered removed"). The exclusion of an individual for disruption or as a sequestered witness is also not a closure. *See State v. Njonge*, 181 Wash. 2d 546, 560, 334 P.3d 1068, 1076 (2014) ("exclusion of a witness from voir dire should be treated as a matter of court discretion and not as a closure implicating the public trial right"); *State v. Lormor*, 172 Wash. 2d 85, 93, 257 P.3d 624, 628 (2011) (concluding no closure occurred where "only one person was excluded, and there was no general prohibition for spectators or any other exclusion of the public"). An order specifically excluding the defendant's friends and family may constitute a closure and thus require adequate justification in pre-closure findings. *See In re Oliver*, 333 U.S. 257, 272 (1948) ("[A]n accused is, at the very least, entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged."); *People v. Jones*, 2020 CO 45, ¶¶ 31, 34, 43, 464 P.3d 735 (reversing conviction because exclusion of defendant's parents during testimony of two witnesses without first conducting *Waller* analysis violated his public trial right).

## C

[¶22] To avoid violating the right to a public trial, a trial court must articulate its reasons for closing the courtroom on the record, before excluding the public, "and those reasons must be expressed in findings that enable a reviewing court to exercise its function." *Klem*, 438 N.W.2d at 801. "Neither we nor the trial court can satisfy the constitutional command with post-closure rationale for why the closure would have been justified if the court had made the required findings." *Morales*, 2019 ND 206, ¶ 23 (citing *Klem*, at 802). Trial courts are strictly required to make findings before a trial closure, and failure to make each of the findings requires reversal. *Rogers*, 2018 ND 244, ¶ 19. Although

there is no requirement to hold an evidentiary hearing before closing proceedings, it is recognized as "the better course." *People v. Baldwin*, 48 Cal. Rptr. 3d 792, 795-96 (Cal. App. 2006) (citations omitted) (reversing district court finding of overriding interest relying on "unsubstantiated statements of the prosecutor, rather than conducting an inquiry of the prosecution witness on whose behalf the closure request was made").

[¶23] The required pre-closure analysis factors are:

1. the claiming party must advance an overriding interest that is likely to be prejudiced,
2. the closure must be no broader than necessary to protect that interest,
3. the trial court must consider reasonable alternatives to closing the proceeding, and
4. it must make findings adequate to support the closure.

*Decker*, 2018 ND 43, ¶ 9 (quoting *Waller*, 467 U.S. at 48). If these "factors are met, the public trial right is not violated and the proceedings may be closed." *Rogers*, 2018 ND 244, ¶ 18.

[¶24] The party seeking closure must assert an overriding interest to the court, and that interest must be the standard against which the court tailors any closure in order for the right to a public trial to yield to an overriding interest. *Morales*, 2019 ND 206, ¶ 21. The Supreme Court explained in *Waller* that an overriding interest may include "the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45. It is generally agreed that protecting the physical and psychological wellbeing of a minor victim of sexual assault satisfies *Waller*'s requirement to present an overriding interest likely to be prejudiced. *See, e.g., United States v. Ledee*, 762 F.3d 224, 229 (2d Cir. 2014); *United States v. Yazzie*, 743 F.3d 1278, 1287 (9th Cir. 2014). In some circumstances, specific concerns about "threats of improper communications with jurors or safety concerns are concrete enough to warrant closing *voir dire*." *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (per curiam). But a "conclusory assertion" is insufficient—the interest and the threat to that interest must be articulated in

12

findings specific enough for review on appeal. *Id.* at 215-16. A trial court's desire for convenience or efficiency will not satisfy the requirement for an overriding interest. *Steadman v. State*, 360 S.W.3d 499, 508 (Tex. Crim. App. 2012) ("neither convenience nor judicial economy can constitute an 'overriding interest'").

[¶25] Any closure must be no broader than necessary to protect the asserted interest. "The paramount concern is that closure be tailored to the circumstances of the perceived risk to a fair trial." *Holum*, 380 N.W.2d at 350. Any closure "must be narrowly tailored so that the public is excluded only from that portion" that jeopardizes the identified overriding interest. *Id. Compare People v. Whitman*, 205 P.3d 371, 380 (Colo. Ct. App. 2007) (holding that partial closure of trial was no broader than necessary where the trial court restricted spectators' entry and exit during testimony of minor victim who was previously distracted by such movement) *and Tinsley v. United States*, 868 A.2d 867, 876–78 (D.C. 2005) (holding exclusion no broader than necessary to protect safety of witness where exclusion was limited to that witness's testimony and excluded only individuals who had intimidated the witness), *with People v. Grosso*, 281 A.D.2d 986, 987-88, 722 N.Y.S.2d 846, 847 (App. Div. 4th Dept. 2001) ("[T]he court failed to meet the requirement that the closure be no broader than necessary because the court excluded the public at large despite the fact that Jane Doe 2 stated that she would be uncomfortable only if defendant's family members were present.").

[¶26] A trial court must consider alternatives to closure even when the a party opposing closure does not offer any alternatives. *Presley*, 558 U.S. at 214; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81 (1980). Appropriate alternatives will depend on the overriding interest asserted, but where space is a factor, for example, reserving a portion for the public, dividing the jury pool into groups, or instructing jurors and the public not to interact with each other should be considered. *Presley*, at 215. The district court has "the duty to *sua sponte* consider reasonable alternatives to closure" and should consider the "widest possible array of alternatives." *Ledee*, 762 F.3d at 230-31 (citing *Presley*, 558 U.S. at 214).

13

[¶27] Finally, the district court must articulate findings sufficient to explain its reasoning as to what overriding interest justifies the closure, how that interest would be harmed absent a closure, and what portions of the proceedings are likely to implicate the interest. *Waller*, 467 U.S. at 48. Findings must be based on evidence and not simply conclusory assertions. *Holum*, 380 N.W.2d at 350 ("It is not enough for the trial court to order closure based upon the bare assertions of counsel."); *State v. Mahkuk*, 736 N.W.2d 675, 685 (Minn. 2007).

## II

### A

[¶28] Moore was a school teacher in Williston when he was charged with eight counts of gross sexual imposition alleging sexual contact with eight of his students. Prior to trial, the court mailed questionnaires to the jury panel.

[¶29] Five days before trial, the district court held a pretrial hearing to discuss Moore's motion for continuance and the jury panel questionnaires. The motion for continuance was argued and denied in open court. Scheduling of the trial was also discussed in open court. When the discussion continued to the jury questionnaires, the court stopped the discussion and stated that this type of information would be discussed "outside of the presence of the audience." The court asked the parties whether they felt this portion of the hearing should be treated "as a matter in chambers." The State indicated that it did not want the court to close the courtroom. Moore's attorney replied, "I think that this is exactly the type of information that these people were candid about on these juror questionnaires that would be the type of material that would be behind closed doors; that's the defense's position." The court agreed with the defense and directed the members of the public present to vacate the courtroom, stating "we are using this courtroom as chambers." The parties then discussed for cause challenges to prospective jurors and stipulated to excusing several panelists.

[¶30] The trial commenced on September 23, 2019, at 8:30 a.m. with a pretrial conference, during which additional jury questionnaires as well as administrative matters were discussed. The court began by noting that "we are

14

using courtroom 301 as chambers for the purposes of this meeting." The record indicates that the jury panel had been ordered to report at 10:30 a.m. and was not present. Other than the reference to using the courtroom as chambers, the record is silent as to whether this part of the proceeding was closed to the public. During the pretrial conference, the court ruled on ten challenges for cause.

[¶31] Later, the prospective jurors were asked a number of questions, as a panel, in open court. The court recessed after questioning of the panel concluded. After the recess, the court went on the record in the judge's chambers to individually question two panel members who had indicated that they wished to speak privately. After questioning the two individuals, the court continued in chambers with challenges for cause, ruling on seven, at which point the parties passed for cause.

[¶32] On the final day of trial, after both parties rested, the court announced that it would "use this courtroom as chambers for going over the final instructions and also a couple of other issues that we'll need to address." This occurred at the close of evidence but before closing arguments. The court stated that the jury had been excused and informed the public that the proceeding would not be open. Moore's attorney stated that it was "fine by me" that the courtroom was being used as chambers, and the court went on to state that this would not be one of the open proceedings. The parties then discussed the expanded media order and the potential recording of closing arguments by a reporter as well as final jury instructions, jury verdict forms, procedural questions related to playing videos for the jury, handling jury questions during deliberations, and the length of deliberations. These proceedings were not open to the public.

[¶33] The first closure was ordered by the court during the first pretrial hearing to discuss for cause challenges to potential jurors based on their responses to the questionnaires mailed out prior to the start of trial. In *Presley*, the United States Supreme Court held that the Sixth Amendment public trial right extends to jury selection. *Presley*, 558 U.S. at 213; *see also Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 505 (1984).

15

[¶34] The first pretrial hearing started in open court with members of the public present. After announcing that it would be moving to for cause challenges, the court stopped the proceedings and asked the parties if they wished for the people in the courtroom "to be excused in treating this next portion as a matter in chambers." The following exchange occurred:

> MS. DEMELLO RICE: Your Honor, the State would not want you to close the courtroom.
> MR. BOLINSKE: I think that this is exactly the type of information that these people were candid about on these juror questionnaires that would be the type of material that would be behind closed doors; that's the defense's position.
> THE COURT: And that is what the Court is going to find. This is not something that would typically be necessarily open to the public. This is not testimonial. The reason that we did these questionnaires is so that we would not have any type of taint.
> So the position of the State is noted, but I'm going to ask those in the courtroom to please vacate the courtroom. And again, we are using this courtroom as chambers for the purposes of this.

After discussing the issue further with the State, the court stated:

> Just so we're clear for the record, I did not close the courtroom. I just simply indicated that these are matters that we are addressing in chambers and matters that are not appropriate to be addressed in open court, but that they are matters we need to address, again, in chambers on the record.
> So is it — are the parties comfortable that we're not closing the courtroom? We're simply addressing matters in chambers that need to be addressed in chambers.

Both the State and the defense responded in the affirmative.

[¶35] This record does not reflect a knowing, intelligent, and voluntary waiver of the right to a public trial. The trial court expressly stated "I did not close the courtroom" when it excluded the public to use the courtroom as chambers. The transcript suggests the district court excluded the public to protect the privacy of potential jurors, but the topics discussed were typical of jury selection and not limited to the type routinely discussed in chambers. The court did not inform Moore that he had a right to a public trial. The court did not inquire of

16

Moore to elicit an express waiver of a known right. Instead, the court implied that the defendant had no right to have the proceedings held in front of the public. The record discloses only that the court closed the proceeding apparently as an exercise of discretion rather than as a part of a determination in which Moore had any say in the matter. We conclude this record does not establish a voluntary and intentional relinquishment of Moore's right to a public trial.

[¶36] Because the issue was not waived and not preserved by Moore with a timely objection, we review this forfeited error only for obvious error. *Morales*, 2019 ND 206, ¶ 24, 932 N.W.2d 106; *State v. Pemberton*, 2019 ND 157, ¶ 8, 930 N.W.2d 125. Obvious error requires the defendant to demonstrate: "(1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights." *Pemberton*, at ¶ 9. "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law." *Id.* at ¶ 8.

[¶37] The district court ordered the first closure to discuss juror questionnaires and challenges for cause after having discussed administrative matters with the parties in open court. The court informed the parties that the hearing was being conducted as if in chambers and that the court did not view its action as closing the trial to the public. After the audience vacated the courtroom, the parties stipulated to the dismissal of 10 prospective jurors, and the court ruled on a total of 23 challenges for cause.

[¶38] Rule 24(b)(1)(A), N.D.R.Crim.P., requires the trial court to excuse a prospective juror upon finding grounds to challenge for cause. This is required to avoid prejudicing other prospective jurors against the attorneys. N.D.R.Crim.P. 24, Explanatory Note. Here, the prospective jurors were not present in the courtroom. The court's only explanation for holding the hearing outside the presence of the public was to prevent juror taint, and it is clear from our cases and *Waller* that the court must also consider alternatives to closure and narrowly tailor any closure. *Presley*, 558 U.S. at 215.

[¶39] The district court proceeded as if a hearing held in chambers negated the need for the *Waller* analysis. While a court may use a courtroom as chambers in some circumstances, it is not the location of the proceeding that determines

the need for the *Waller* analysis but rather the type of proceeding. *Smith*, 876 N.W.2d at 329. During this proceeding, the court discussed for cause challenges based on the written juror questionnaires with the parties. Written questionnaires are "synonymous with, and a part of, voir dire." *Forum Commc'ns Co. v. Paulson*, 2008 ND 140, ¶ 21, 752 N.W.2d 177. "The right of public access articulated in *Press-Enterprise* has been applied to preliminary jury questionnaires." *Id.* at ¶ 16 (citations omitted). The public right of access to proceedings involving juror questionnaires must be balanced against competing interests under the *Waller* factors. *Id.* In *Press-Enterprise*, the United States Supreme Court found, after discussing the history of trials, that "the accused has generally enjoyed the right to challenge jurors in open court at the outset of the trial" since the 14th and 15th centuries. 464 U.S. at 506. Although *Press-Enterprise* and *Forum-Commc'ns Co.* were cases dealing with the First Amendment right of the press and public, "the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller*, 467 U.S. at 46. The court made no findings on the record as to why these proceedings were closed to the public and did not analyze the closure under any of the *Waller* factors. The first trial closure without pre-closure findings was a clear deviation from an applicable legal rule under *Waller* and this Court's public trial decisions; thus, it was plain error satisfying the second element for obvious error.

[¶40] The third element of obvious error to be considered is whether the error "affects substantial rights." N.D.R.Crim.P. 52(b). An error that is harmless is one that does not affect substantial rights, and structural errors are immune to harmless error analysis; thus, structural errors affect substantial rights. *Morales*, 2019 ND 206, ¶ 26 (citations omitted). Because the first trial closure was a structural error, it necessarily affects substantial rights for purposes of Rule 52(b). Accordingly, this trial closure is an obvious error.

[¶41] An appellate court has discretion whether to correct an error when the defendant establishes that the error is obvious. *Morales*, 2019 ND 206, ¶ 24. The appellate court "should correct it if it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olander*, 1998 ND 50,

¶ 16, 575 N.W.2d 658. "Ultimately, the district court must take 'every reasonable measure to accommodate public attendance at criminal trials.'" *Morales*, at ¶ 19 (quoting *Presley*, 558 U.S. at 215). Before each of the four closures here, the court made no findings on the record as to why these proceedings were closed to the public and did not analyze the closures under any of the *Waller* factors.

[¶42] Here, we conclude that the exclusion of the public without a knowing, intelligent, and voluntary waiver or *Waller* findings articulated on the record before the closures negatively affects the fairness, integrity, and public reputation of our criminal justice system. *Olander,* 1998 ND 50, ¶ 28. Because these public trial violations began during jury selection and continued to occur during the trial, the remedy is a new trial. *Rogers*, 2018 ND 244, ¶ 3, 919 N.W.2d 193.

B

[¶43] Martinez was charged with continuous sexual abuse of a child. Before trial, the State moved to close the courtroom for the victim's testimony. The State argued she was then approximately thirteen or fourteen years old and at an age when her peer-group would be old enough to cause her grief about the situation. In addition, there had been no public disclosures of her identity, the allegations were very personal, involving multiple penetrative sexual acts. During a hearing on the State's motion, Martinez's attorney stated that he did not oppose the motion to close the courtroom for the victim's testimony. A representative from the Williston Herald newspaper expressed opposition to the motion. The court stated the public, including the media, had an interest in the motion and it would wait to decide the motion to give the media an opportunity to file an objection.

[¶44] The week before trial, the State moved to close the courtroom for the testimony of the counselor for the victim and her siblings. The State alleged the counselor expressed concern that her testimony in an open proceeding would adversely affect her ability to work with the victim and her siblings, information about what the children discussed with her could impact the

19

children's interactions with their peers, and the information had not previously been disclosed to the public.

[¶45] The Williston Herald filed an objection to the State's motions to close the courtroom, asking the district court to deny both of the State's motions. The court held a hearing on the motions to close the courtroom for the counselor's testimony. The court asked Martinez's attorney if there was anything he would like to put on the record regarding the motion, and he stated, "No. I—I—I agree. I think it's—you know, we're not trying to take a position where things are exposed to the public. That's totally fine that—we—we do not oppose any request for the courtroom to be closed." The State asserted that the counselor's testimony would involve information that the victim and her siblings considered to be confidential between themselves and their counselor, and the counselor was concerned that having the confidential information public would make it impossible to work with the children in the future. Martinez stated he did not oppose any request for the courtroom to be closed.

[¶46] The district court granted the State's motions. The court ordered the courtroom be closed to the public during the testimony of the victim and the counselor with the exception of one member of the media, who could report on the testimony. The court found the presence of a media member during the testimony of the two witnesses would protect Martinez's rights and promote the public policy of open courtrooms while advancing the victim's privacy. The court ordered the media member be prohibited from disseminating the victim's name. A jury trial was held in February 2019. The jury found Martinez guilty of continuous sexual abuse of a child. A criminal judgment was entered.

[¶47] The record does not reflect a knowing, intelligent, and voluntary waiver. There is no indication that the defendant was informed prior to the courtroom closure that he had a constitutional right to a public trial. Martinez, through counsel, did confirm he did not object to closing the courtroom and did not oppose the State's request. But nothing indicates knowledge that a constitutional right was implicated and that he was being asked to waive it. Without an express oral or written acknowledgment that the defendant knows he has a right to a public trial and affirmatively chooses to waive it, we consider

the alleged error to be forfeited and not waived. Accordingly, we review these closures only for obvious error.

[¶48] There is no dispute that the courtroom was closed for the testimony of the child victim and for the victim's counselor. The court's pretrial order granting the State's motions for closure acknowledged the *Waller* requirements and made findings. We review those findings for clear error.

[¶49] The district court's findings in support of closing the courtroom for the victim's testimony are not clearly erroneous. The court noted that the State did not advance a specific interest. The moving party's failure to assert an overriding interest would in most cases be fatal to its motion to close a trial. Here, however, the court considered the context of the request and assumed for purposes of the motion that the State's interest was to allow the juvenile victim to testify without fear, to keep her identity private, and to shield her from coercion and intimidation. Here, the State's motion to close the courtroom cited both *Waller* and N.D.C.C. § 12.1-35-05.2. On this record, it was not clearly erroneous to infer that the overriding interest for purposes of *Waller* was the express purpose of the statute: "to protect the child from possible trauma resulting from publicity," N.D.C.C § 12.1-35-03(1), "to protect the child's reputation," N.D.C.C. § 12.1-35-05.2, and to avoid "disclosure [that] would cause serious harm to the witness," N.D.C.C. § 12.1-35-05.2(5). It is well established that a courtroom may be closed for testimony of a juvenile victim of a sex offense, provided there is individual analysis and not simply a blanket rule or statute closing all such testimony. *See, e.g., Ledee*, 762 F.3d at 229; *Yazzie*, 743 F.3d at 1287.

[¶50] The district court's findings on the second and third *Waller* factors tersely state that the "closure does not appear to be overly broad," and it "does not appear to this court that there are reasonable alternatives other than closing the courtroom for the testimony of Jane Doe." The district court has "the duty to *sua sponte* consider reasonable alternatives to closure" and should consider the "widest possible array of alternatives." *Ledee*, 762 F.3d at 230-31 (citing *Presley*, 558 U.S. at 214). With respect to the closure for the minor victim's testimony, the breadth of the closure was adequately tailored to the interest asserted. Although on appeal Martinez suggests that as an alternative

21

to closure, only the victim's mother could have been excluded, citing the district court's statement at the pretrial conference just before jury selection that the "only reason" the court was closing the courtroom was because the victim's mother would be present and "I don't want her to be influenced or intimidated by her mother." This was specifically in response to the State's objection to the court allowing one member of the media to remain in the courtroom and did not address the other interests supporting the court's closure order. The parties below did not suggest other reasonable alternatives to closure that would have accommodated the overriding interest asserted. Because Martinez has identified no reasonable alternatives to closure on appeal, and we can think of none, we find no error in the district court's finding no reasonable alternatives to closure during the victim's testimony.

[¶51] The district court also closed the trial for the testimony of the counselor of the victim and her minor sisters. Like the first closure, the State's pretrial motion cited both *Waller* and N.D.C.C. § 12.1-35-05.2, which in these circumstances requires a "hearing to determine whether the testimony of *and relating to* a child may be closed to the public." (Emphasis added.) The court accepted as an overriding interest the State's statement that the counselor had expressed concern that her testimony in open court would adversely affect her ability to work with the victim and the victim's sisters. The court made brief findings that the request to close the trial for the counselor's testimony was narrowly tailored to protect that interest and there were no reasonable alternatives to the closure.

[¶52] The district court's findings in support of the second closure are clearly erroneous. It found the counselor's concern to be an overriding interest without inquiring of the counselor or receiving any evidence in support of the State's second-hand assertion of her concerns in its brief. By failing to take evidence in support of the asserted overriding interest, the district court deprived itself of the specificity that would have enabled it to tailor any closure to only that part of the testimony that might have been most sensitive to the victim. *Ledee*, 762 F.3d at 229 (relying on affidavit to provide detail supporting overriding interest). In addition, the court simply accepted the asserted interest without articulating how it overrides the defendant's and public's right to open

proceedings. The prototypical example of an overriding interest is "the right of the accused to a fair trial." *Press-Enterprise*, 464 U.S. at 508. Trials may be closed only to the extent necessary to serve higher values such as the right to a fair trial. *Id.* at 510. There is no suggestion that the counselor would not have testified fully and truthfully in open court. The asserted interest was a risk of harm to her counseling relationship with the victim and her siblings. Without more, that interest is insufficient to satisfy the *Waller* requirement for an overriding interest. This was error. Moreover, the generalized interest in avoiding harm to the counselor's relationship with the victim and her siblings suggests the obvious alternative of excluding only the victim, her mother, and her sisters.

[¶53] The district court did not explain what alternatives it considered and rejected as not reasonable under the circumstances. The district court's failure to consider reasonable alternatives constitutes an error that is plain. Because a public trial violation is a structural error, it affected Martinez's substantial rights. *Morales*, 2019 ND 206, ¶¶ 25-26. The court's *Waller* findings are insufficient to justify closure of the trial during the counselor's testimony and constitute obvious error. We conclude the district court's closing of the trial based on an insufficient interest without considering obvious alternatives negatively affects the fairness, integrity, and public reputation of our criminal justice system. *Olander,* 1998 ND 50, ¶ 28. The remedy for a public trial violation is a new trial.

III

[¶54] We have considered other issues and arguments raised by the parties and conclude they are either without merit or unnecessary to our decision. We reverse the judgments and remand for a new trial.

[¶55] Jon J. Jensen, C.J.
        Daniel J. Crothers
        Jerod E. Tufte

**VandeWalle, Justice, concurring and dissenting.**

[¶56] I concur in the result of the majority opinion with regard to Moore. I dissent to the majority opinion with regard to Martinez. And, while I do not believe the majority opinion so indicates or it is the intent of the writer of the majority opinion to so indicate, I am concerned that the reference to the public right to attend a trial and the right of the defendant to a public trial may lead the readers to believe that they are one and the same; they are not.

I

[¶57] While a representative of the press did object to closure of the Martinez trial, they did not appeal the decision to close portions of the trial, apparently satisfied with the court's decision to allow a member of the press to attend those portions closed to the public. The Sixth Amendment right to a public trial is the right of the accused. *Presley v. Georgia*, 558 U.S. 209, 212 (2010). In a defendant's appeal raising Sixth Amendment issues, courts have discussed the press and public's First Amendment right to be present during a trial, but usually in the context of stating the defendant's Sixth Amendment right to a public trial cannot be any less protective than the press or public's right to be present under the First Amendment. *See Waller v. Georgia*, 467 U.S. 39, 46 (1984). The Supreme Court has also indicated the rights may not provide the same protections, stating, "The extent to which the First and Sixth Amendment public trial rights are coextensive is an open question, and it is not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other." *Presley*, at 213. The requirement of a public trial is for the benefit of the accused, so that the public may see he is fairly dealt with and not unjustly condemned, to ensure the judge and prosecutor carry out their duties responsibly, and to encourage witnesses to come forward and discourage perjury. *Waller*, at 46.

[¶58] In any event, a defendant cannot request relief based on the legal rights and interests of a third party. *See Whitecalfe v. N.D. Dep't of Transp.*, 2007 ND 32, ¶ 16, 727 N.W.2d 779 (stating to have standing a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties). So a defendant cannot assert his

24

conviction should be reversed because the public's First Amendment rights were violated. *See State v. Herron*, 356 P.3d 709, 713-14 (Wash. 2015) (holding defendant waived his right to a public trial and did not have standing to assert public's right to open administration of justice).

II

[¶59] If I understand the majority opinion correctly, a small closure is equivalent to closing the entire trial to the public. *See* majority opinion, ¶ 13. Although I understand the majority's pursuit of a bright line rule in these instances, I do not believe that "one size fits all" is appropriate. I do agree with much of what the majority has written concerning Moore and its application. It is the application to Martinez with which I disagree.

[¶60] The majority recognizes "protecting the physical and psychological wellbeing of a minor victim of sexual assault satisfies *Waller*'s requirement to present an overriding interest likely to be prejudiced." Majority opinion, ¶ 24. Before the Martinez trial, the State moved to close the courtroom for the victim's testimony, arguing testifying in public would be detrimental to the victim's wellbeing given the nature of the allegations. The district court and the majority opinion acknowledged this as an overriding interest that satisfies the first *Waller* factor when applied to the victim's testimony.

[¶61] Conversely, the majority opinion disallows the same acknowledgment when applied to the counselor's testimony. The State asserted the counselor's testimony would include information the victim and her siblings considered confidential between themselves and the counselor, and the counselor was concerned that having the confidential information public would make it impossible to work with the children in the future. Section 31-01-06.4, N.D.C.C., illustrates the purpose of keeping communications between a counselor and a patient confidential is to protect the wellbeing of the patient.

[¶62] In addition to addressing the *Waller* requirements, the district court went through the statutory requirements under N.D.C.C. § 12.1-35-05.2 for both the victim's and the counselor's testimony. In its order responding to the State's motions, the court incorporated the findings for the victim's testimony when it addressed the testimony of the counselor. This incorporation included

findings under N.D.C.C. § 12.1-35-05.2(4)-(5) that the victim could be subject to opprobrium by her peers and the victim's identity should be protected. If the district court could acknowledge protecting the child's wellbeing as an overriding interest when applied to the victim's testimony, it should be allowed to acknowledge the same when applied to the counselor's testimony. However, to close the courtroom for the counselor's testimony, the majority opinion would require the court to take evidence to come to the same conclusion.

[¶63] Additionally, the majority opinion would require the district court to consider more alternatives to closing the courtroom for the counselor's testimony than it would for the victim's testimony. "[A] district court has the duty to *sua sponte* consider reasonable alternatives to closure," and when exercising best practices should "err on the side of caution by considering the widest possible array of alternatives." *United States v. Ledee*, 762 F.3d 224, 231 (2d Cir. 2014). In both instances, the court considered and implemented an alternative plan where one member of the press would be allowed to listen to and report on the testimony, without reporting the victim's name. The court complied with the *Waller* requirement when it considered and implemented this reasonable alternative plan to completely closing the courtroom. The majority opinion would require the court to exercise best practices and consider broader alternatives to closure when applied to the counselor's testimony, but not the victim's testimony.

[¶64] Because I do not believe such repetition is necessary in this instance, I would therefore affirm the judgment of conviction for Martinez.

[¶65] Gerald W. VandeWalle

**McEvers, Justice, dissenting.**

[¶66] I respectfully dissent. The majority, at great length, has summarized this Court's meanderings through the issue of structural error, and whether a structural error may be waived. Majority, at ¶¶ 4-13. The majority's thoughtful and candid summary of our less than consistent jurisprudence is the reason that I dissent. I agree with the majority that a defendant may waive his or her right to a public trial. Because we have not before been clear that the right to a public trial is a right that may be waived, and there is division among the federal circuits and our sister states on what constitutes waiver of a defendant's right to a public trial, I cannot conclude the district court obviously erred. Majority, at ¶ 13.

[¶67] I do not object to the majority's adoption of a new procedural rule, that in future cases, a specific type of showing must be made to conclude defendant's waiver of the right to a public trial is knowing, intelligent, and voluntary. Majority, at 13. As noted by the majority, under *Waller v. Georgia*, it is for state courts to decide whether a defendant who agrees to a closure "is procedurally barred from seeking relief as a matter of state law." Majority at ¶ 14 (quoting *Waller v. Georgia*, 467 U.S. 39, 42 n.2 (1984)). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citations of learned treatises omitted). I cannot say the majority's method for determining the appropriate standard for waiver of a public trial right is unsound. Majority, at ¶¶ 15-18.

[¶68] However, this Court could have adopted a rule that is less onerous for what constitutes waiver of the right to a public trial than the rule we adopt today. Other courts have held a defendant waives his Sixth Amendment public trial right when he consents to a courtroom closure. *See United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006); *see also* Wayne R. LaFave, et al., *Criminal Procedure* § 24.1(a) (4th ed. 2020) ("Waiver of the right to public trial is considered a tactical decision that may be made by defense counsel and need not be made personally by the defendant. The right also can be forfeited. For

27

example, many courts, reasoning either that the error is waived or that the defendant cannot establish 'plain error' warranting relief, will not grant relief based on the exclusion of spectators if the defendant fails to object to closure."). *See also Alvarez v. State*, 827 So.2d 269, 274 (Fla. Dist. Ct. App. 2002) (stating majority view in the country is that failure to object to closure waived the right to a public trial). In *Addai v. Schmalenberger*, the Eighth Circuit considered the waiver of the Sixth Amendment trial right in a North Dakota case and said, "A defendant may certainly consent to the closure of the courtroom if he believes it to be in his favor, and if he chooses to do so, he can hardly claim on appeal that the closure violated his Sixth Amendment right." 776 F.3d 528, 533 (8th Cir. 2015).

[¶69] In order for there to be an obvious error, there must be a clear deviation from an applicable rule under our current law. *State v. Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774. In other words, there is no obvious error when an applicable rule is not clearly established. *Id.* We have not previously announced a standard for waiving a public trial right, and we should not expect our trial courts to be clairvoyant.

[¶70] In *Moore*, the defendant's attorney agreed with the district court that discussion of jury questionnaires should be held in chambers, but used the courtroom as chambers. Moore, through his attorney, not only consented, but encouraged the procedure. In *Momah v. Uttecht*, the Ninth Circuit Court of appeals reviewed a state court conviction when the prisoner petitioned for habeas relief. 699 Fed. Appx. 604 (2017). In *Momah*, the defendant and the prosecution sought to individually question potential jurors in chambers with only Momah, counsel and a court reporter present. *Id.* at 605. At issue was whether the Washington Supreme Court's determination that the temporary closure of the court for voir dire did not violate Momah's right to a public trial. *Id.* at 606. After discussing the application of *Presley v. Georgia*, 558 U.S. 209 (2010), which firmly established a defendant's Sixth Amendment right to a trial extends to voir dire, the court concluded:

> But Momah has not shown that the Washington Supreme Court's decision is contrary to Supreme Court precedent, even after *Presley*. The Washington Supreme Court could reasonably

28

conclude that under Supreme Court precedent, a defendant can waive the public trial right guarantee by failing to object to closure of the voir dire proceeding. *See Peretz v. United States*, 501 U.S. 923, 936-37, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), for the proposition that "failure to object to closing of courtroom is waiver of right to public trial"). Moreover, *Waller* makes clear that even if closing a trial proceeding violates the public trial right, a new trial on the merits need not be ordered. 467 U.S. at 49, 104 St.Ct. 2210. In *Glebe v. Frost*, 574 U.S. 21, 135 S.Ct. 429, 430-31, 190 L.Ed.2d 317 (2014), the Supreme Court, citing its prior opinion in *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), suggested that only errors that infect the entire trial process and necessarily render the trial fundamentally unfair require automatic reversal. The temporary closure in this case does not meet this standard.

*Momah*, at 607.

[¶71] This Court could just as easily craft our new waiver rule based on failure to object or on consent. I understand the majority's rationale for creating a methodic procedure for waiver. "The difference between forfeiture and waiver is hard to delineate." *United States v. Burns*, 843 F.3d 679, 685-86 (7th Cir. 2016) (noting a strategic decision demonstrates the defendant made a knowing and intelligent waiver, but the analysis requires some conjecture in light of the record as a whole). Regardless of the waiver issue, like the court in *Momah*, 699 Fed. Appx. 604, even if there was a constitutional violation, I do not see how closing the courtroom to review jury questionnaires, with counsel and the defendant present, so infected the entire trial process to render it fundamentally unfair to Moore.

[¶72] Martinez also consented to both closures. Martinez did not argue he did not waive his right to a public trial. Rather, he argued, based on our precedent, that the closure was a structural error so intrinsically harmful as to require automatic reversal regardless of whether his right was forfeited or waived. As noted by Justice VandeWalle, it was the press that objected to the closure in Martinez, a member of the press was allowed to stay in the courtroom and they have not appealed the district court's decision. VandeWalle, Justice,

concurring and dissenting, at ¶ 57. Without prior guidance from this Court on the procedure for waiving a public trial right, the district court could not have obviously erred by considering consent by Martinez to partially close the courtroom as a waiver of his public trial rights. The district court did the *Waller* analysis, which the majority has decided was adequate for the child, but inadequate for the counselor. I fail to see how a partial closure of the courtroom, which the defendant agreed to, so infected the entire trial process to render it fundamentally unfair to Martinez.

[¶73] Because the defendants consented to the closures, and no previous precedent existed that consent was not adequate for waiver, there was no obvious violation of either defendant's right to a public trial. Even if the defendants' public trial rights were violated, I do not view the trial process in either instance to be fundamentally unfair. Therefore, I would affirm.

[¶74] Lisa Fair McEvers